Wallace B. MOORE, Plaintiff In Error,

v.

STATE of Oklahoma, Defendant In Error.

No. A–12349.

Criminal Court of Appeals of Oklahoma.

Nov. 21, 1956.

358

Leon J. York, Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

The defendant, Wallace B. Moore, was charged by an information filed in the County Court of Payne County with driving a half ton pickup truck on a public highway while under the influence of intoxicating liquor, was tried and found guilty by verdict of a jury who left the punishment to be fixed by the court. Thereafter the defendant was sentenced to serve 15 days in the county jail and to pay a fine of $150 and has appealed.

Three assignments of error are presented: 1. The evidence was insufficient to support the verdict. 2. Defendant was not given a fair trial. 3. County attorney was guilty of misconduct in asking the defendant impeaching questions.

In connection with the first assignment of error the proof showed that defendant was traveling in a line of cars on State Highway No. 51 about one mile east of the City of Yale. A car being driven by one Teddy Barnes stopped on the highway because a school bus had stopped in front of him and defendant bumped into the rear of the Barnes automobile. The Barnes automobile was struck on the bumper and left rear fender. After the collision Barnes and the defendant had a conversation and it was decided that the highway patrol should be called so Barnes went to a nearby farmhouse and called the highway patrol.

Barnes testified that he had a conversation with the accused before the arrival of the highway patrolmen and that he did not notice anything peculiar about him. That the highway patrolmen arrived in about 30 minutes and after one of the patrolmen had taken some measurements on the road, he asked Barnes and the accused to get into the

back of the patrol car so that he could talk to them. Barnes said that for the first time he then thought he detected the odor of alcohol or beer on defendant's breath. A few people stopped at the scene of the collision including the two Douteys. The defendant Moore was in his shirt sleeves but before the highway patrolmen arrived someone had brought him a coat as the night was cold.

Carl Pugh, highway patrolman, testified that he was notified by radio of the collision between the Barnes automobile and the pickup of the defendant and went to the scene of the collision to make an investigation; that when he arrived he talked to the parties who were the drivers of the respective vehicles. The witness then made measurements and gathered the physical evidence including the license numbers of the vehicles. Up to that point the patrolman did not suspect the accused of being intoxicated but he then asked both drivers to get into the patrol car with him to give him the details of the collision because it was too cool to remain outside. While he was talking to Barnes and the defendant in the patrol car he detected the odor of alcohol on one of them. The patrolman then talked to Barnes and Moore separately, did not detect any odor of alcohol on Barnes, but did on the defendant. That he then asked the defendant what he had been drinking and defendant said that a friend had stopped by after the accident and he had taken two drinks of whiskey because the weather was cold; that he then asked the defendant if he would submit to an intoximeter test and the defendant agreed and did blow his breath into the rubber balloon which was used in giving the test. The visual test cleared in 24 seconds which indicated to the officer that the defendant was intoxicated. He also sealed one tube in which the defendant had blown his breath and sent it to the state chemist in Oklahoma City for a chemical analysis. The patrolman testified that the only outward evidence of defendant's intoxication other than his breath was the fact that he walked very erect and was over-polite during the questioning. On cross-examination the patrolman said that when he arrived at the scene of the collision the defendant walked across the highway over to where the patrol car stopped and that defendant talked to the patrolman at that point and told him he was the driver of the pickup truck. On redirect examination the patrolman testified that he had known the accused three or four years and he walked more erect and stiff than he had seen him walk on other occasions.

T. E. Hall, another highway patrolman, accompanied patrolman Pugh to the scene of the collision and his testimony was substantially the same as that of Pugh. When asked to detail what he observed which made him think defendant was intoxicated, he answered:

"I observed the very cautious and stiff manner in which he walked; * * * Well, he was overly polite. He began his remarks with 'sir' and ended them with 'sir' quite often."

Both patrolmen testified that the defendant did not weave or stagger and both testified that they were unable to say that he was intoxicated until after he was given the test to determine scientifically the degree of intoxication.

Mr. Pugh was recalled as a witness and testified that defendant's pickup laid down 33 feet of skid marks before he struck the rear of the Barnes car.

Joe Bradley, undersheriff, testified that the patrolmen delivered the defendant to him for transportation to the county jail; that he smelled a strong odor of alcohol on the defendant's breath. That he had known the defendant quite a while and that in his opinion he was under the influence of intoxicating liquor when he was delivered to jail.

P. L. Wood, the state chemist, testified that he received a tube from Mr. Pugh, the patrolman, and made a chemical analysis to determine the percentage of blood alcohol; that his analysis of the tube showed that the person from whom the sample was taken had a blood alcohol content of .25 percent by weight. He further testified:

"There are several stages of intoxication as we know it today. The intoxication actually starts at about .05 per cent. That's when the first stages, some people get light headed, some start getting thick tongued, begin and generally requires two ounces of bourbon, hundred proof. Then the percentage is inclined to readily succumb to its effects. The toxic nature of the alcohol, the way they have it set is from 0 to .05, not under the influence; from .05 to .15, you are under the influence but we all differ biologically and mechanically and some of us would be more under the influence in that range than others, some would be greatly influenced. Through extensive tests that have been completed they have set the standard of .15 per cent or above, anyone falling within that range is definitely under the influence of alcohol."

On cross-examination the chemist testified that if a person had just recently taken a drink of whiskey there would still be enough in the saliva in his mouth to affect the breath and would indicate that the subject was more intoxicated that he actually was; that the instructions given with the intoximeter stated that the test should not be given within 20 minutes after the subject had taken a drink of an intoxicant.

J. E. Edwards, Frank Doutey and Ralph Doutey all testified for the defendant that they lived in the vicinity where the collision occurred; that they talked with the defendant and observed him there at the highway and around his pickup. They could not detect anything out of the ordinary in the way he walked and talked and in their opinion he was sober. Mr. Edwards testified that it was a cold night and that he drove the one mile back to Yale to the defendant's home to get a coat for him.

The defendant testified that he was 42 years of age and was engaged in the ranching business; that he had lived in Yale about 8 years, was married and had two children; that on the date in question he had been to a sale in Creek County near Mannford. That after the sale he went to his ranch to feed his cattle and after he fed them he started for home, driving a 1941 Chevrolet pickup. That he was driving along in the line of cars about 40 miles an hour; that the car in front of him stopped suddenly without signaling; that he threw on his brakes but bumped into the back end of the car; that he got out of his pickup and had a friendly conversation with Mr. Barnes. That it was decided that the highway patrol should probably be notified so Barnes went to Mr. Luke's house and called the patrol. That the patrol arrived in about 40 minutes; that it was a cold night and there was quite a bit of traffic on the highway; that he was in his shirt sleeves; that he took his flashlight and signaled to traffic to wave them around the wreck. That it was quite chilly and some of the people he saw there asked him if he wanted a drink of whiskey and that he took one; that he thought it was Bingham Harris who gave it to him. That he rode horses all of the time and also wore cowboy boots and it was his natural walk to walk very erectly. That he did not drive his pickup truck after he had drunk the whiskey. On cross-examination he admitted that he had paid a fine of $40 in Drumright for reckless driving.

In rebuttal Bingham Harris testified that he came to the scene of the collision between Barnes and the defendant and saw the defendant. That he did not give the defendant a drink of whiskey; that the defendant was in his shirt sleeves.

 There was sufficient evidence to show that the defendant was intoxicated at the time of the arrival of the patrolmen. However, we believe this case is controlled by decisions of this court where convictions have been reversed because of an utter failure to show the defendant was intoxicated at the time he drove the vehicle. Phenis v. State, 76 Okl.Cr. 156, 135 P.2d 62; Kennedy v. State, 76 Okl.Cr. 256, 137 P.2d 244. We have consistently adhered to the rule that a verdict will not be disturbed for insufficiency of the evidence when there

is evidence, although it may be conflicting, from which the jury may reasonably or logically draw the conclusion that the defendant is guilty. However, the converse of the rule is equally well settled that where there is no evidence to support a verdict or where it is of such a weak and inconclusive character that a conclusion of guilty may not reasonably be drawn from it, it is the duty of this court to set aside such verdict as contrary to the evidence.

In Cude v. State, 42 Okl.Cr. 357, 276 P. 240 it was stated:

"To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty, transcending mere probability or strong suspicion."

The thing that impresses us is the fact that no one even suspected that the defendant was intoxicated until after the highway patrolmen arrived. There were many people at the scene of the collision and not one of them could be produced to testify that the defendant said or did anything that indicated that he was intoxicated. Even the patrolman did not suspect that he was intoxicated until he detected the odor of alcohol on his breath after the defendant had sat down with the patrolman in the patrol car. The accused might have been drinking alcoholic liquors before the collision occurred; the county attorney proved that defendant was not given a drink by the man the defendant thought had given it to him. Our faith in the reliability of intoximeter tests is somewhat shaken by the developments in this case because if the testimony of the chemist was to be believed (and we have read similar testimony in other cases) an individual who had .25 percent of blood alcohol by weight would be extremely intoxicated and he would probably pass out or become unconscious. Here, however, we have an accused who not only was conscious, but whose only outward symptoms of intoxication were his walking very erect and his politeness in giving answers to the patrolman's questioning. If he had given surly answers to the patrolman or had walked in a shuffling or staggering manner, that also would have indicated intoxication to the patrolmen.

 The case must be reversed for the very simple reason that the State has wholly failed to prove that at the time the defendant drove the automobile he was under the influence of intoxicating liquor, although it did offer evidence to show that he was under the influence of intoxicating liquor 30 or 40 minutes after the collision occurred. Such evidence indicated that defendant might have been intoxicated several minutes before the test was given, but when considered with all the other evidence we do not think it was sufficient to establish defendant's guilt beyond a reasonable doubt. In view of this disposition of the case, it is unnecessary to discuss the other assignments of error.

Reversed.

BRETT and POWELL, JJ., concur.